IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

G.W. DELANEY and
PHYLLIS DELANEY                                               PLAINTIFFS

            v.                      Civil No. 05-6045

GARY ASHCRAFT, Chief
of Police in his official and
individual capacity, et al                                             DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the motion to dismiss filed by separate Defendants, the City of Mountain Pine, Arkansas, and Robert Jester, Mountain Pine Chief of Police. (Doc. #106). The motion has been referred to the undersigned for report and recommendation by order entered on December 20, 2005. (Doc. #117). The Plaintiffs, G. W. Delaney and Phyllis Delaney, filed a response to the motion to dismiss on December 21, 2005. (Doc. #119).

## BACKGROUND

Plaintiffs' complaint is 95 pages in length including 487 numbered paragraphs accompanied by 318 pages of exhibits. The complaint names 38 Defendants including the Movants. (Doc. #10).

Plaintiffs, residents of Kentucky, allege that they obtained an order of temporary custody of a child, Makayla, in September, 2001, in Bowling Green, Kentucky. Subsequently, Plaintiffs allowed the child to be taken to Garland County, Arkansas, by Plaintiff Phyllis Delaney's sister, Diane Browning. A custody battle then erupted between Plaintiffs and Diane Browning when

the child was not returned.

During this dispute, the Plaintiffs attempted to enlist the assistance of Chief Jester in regaining physical custody of the child. (Doc. #10; pp. 18-21; ¶¶ 106-123). Plaintiff alleges that on February 14, 2002, they went to Mountain Pine and met with Jester. *Id.* at ¶ 106. Plaintiffs state they showed him the Kentucky custody orders, daycare receipts, and other documents regarding the child. *Id.* at ¶ 107. Jester is alleged to have told the Plaintiffs he would go with them from house to house if necessary to find the child. *Id.*

As he was not in uniform, Jester sent two of his officers, Michael Smith and Randall Titsworth, to Browning's residence. (Doc. #10 at ¶ 107). The Plaintiffs' daughter, Zendre Delaney, and Damien Cook were at the Browning home. *Id.* at ¶ 109. The officers talked with the Plaintiffs' daughter and Cook and made a number of phone calls. *Id.*

The Plaintiffs allege they were told to leave for two hours and the officers would have the child when they returned. (Doc. #10 at ¶ 111). The Plaintiffs left Mountain Pine on their way to Hot Springs. *Id.* at ¶ 112. They saw Browning heading toward Mountain Pine and she waved a gun at them. *Id.* The Plaintiffs called 911 and reported that Browning had waved a gun at them and gave their location and the direction Browning was traveling. *Id.* at ¶ 113.

The Plaintiffs then saw Titsworth at a gas station and told him what happened. (Doc. #10 at ¶ 114). Titsworth stated he would follow them but did so very slowly which gave Browning time to get home. *Id.* at ¶¶ 116 & 117. Plaintiffs allege that when they parked in front of Browning's home Titsworth allowed a crowd to gather at the edge of her property and harass them. *Id.* at ¶ 118.

The Plaintiffs allege Jester sent them "into a harmful environment to cause a violent confrontation." (Doc. #10 at ¶ 120). At that point, Plaintiffs allege Titsworth informed them that

Browning knew where the child was but refused to tell them. *Id.* at ¶ 121. Titsworth called Jester and then the Plaintiffs state they were told there was nothing else the officers could do and the Plaintiffs should leave. *Id.* Plaintiffs allege they were "delayed by the Mountain Pine Police Department while a Petition for Involuntary Commitment was being filed to try to commit [Phyllis Delaney]." (Doc. #10 at ¶ 122).

An involuntary commitment proceeding was initiated by Browning in Garland County on February 14, 2002. (Doc. #10 at ¶ 135). Browning obtained an order of involuntary commitment for Phyllis Delaney. Phyllis Delaney was released following an evaluation during which it was determined she did not meet the criteria for involuntary commitment.

Plaintiffs returned to Kentucky where Plaintiffs obtained a final order of custody from a Kentucky court on February 26, 2002. On May 8, 2002, the Plaintiffs state they left additional documents at Jester's office. (Doc. #10 at ¶ 181). On May 22, 2002, Plaintiffs further allege that they regained physical custody of the child by taking her from a daycare center.

Plaintiffs allege that at the request of Detective Paul Norris of the Hot Springs Police Department warrants for their arrest for third degree battery, aggravated assault, and interference with custody were issued in Garland County which led to the arrest of the Plaintiffs in Kentucky. Later, separate Defendant Prosecutor Oliver notified Kentucky authorities that he was no longer seeking the return of the Plaintiffs to Arkansas.

## DISCUSSION

The City of Mountain Pine and Robert Jester move to dismiss the amended complaint on two grounds. First, they contend the claims are barred by the applicable statutes of limitation. In this regard, they point out the only dates on which there was any interaction between the Plaintiffs and the Movants was on February 14, 2002, and May 8, 2002. As this action was not

filed until June 23, 2005, Movants contend all causes of action asserted against them are barred. Second, they contend the complaint fails to state a claim upon which relief can be granted.

Plaintiffs' causes of action against the City of Mountain Pine, Robert Jester, and the other Defendants are enumerated in what Plaintiffs refer to as thirteen separate "counts" beginning at ¶ 372 of the complaint. Plaintiffs allege categorically that all of the Defendants are liable under each cause of action.

In count one, Plaintiffs allege that all of the Defendants denied them equal rights under the law pursuant to 42 U.S.C. § 1981. (Doc. #10, pps. 68-70, ¶¶ 372-380). Section 1981 "provides that all persons shall have the same right to 'make and enforce contracts' and the right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004)(quoting 42 U.S.C. § 1981(a)-(b)).

Under counts one and two, Plaintiffs allude to alleged violations, by the Defendants, of 42 U.S.C. §§ 1985 & 1986.[1] A claim under 42 U.S.C. § 1985 is premised upon the existence of an alleged conspiracy which must be motivated by a class-based animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993). Liability under 42 U.S.C. § 1986 is based upon a defendant's neglect or refusal to prevent a § 1985 conspiracy. *See Steele v. City of Bemidji*, 257 F.3d 902, 906 (8th Cir. 2001), *citing Brandon v. Lotter*, 157 F. 3d 537, 539 (8th Cir. 1998); *see also Gatlin v. Green*, 362 F.3d 1089, 1095 (8th Cir. 2004)(a section 1986 claim must be predicated upon a valid section 1985 claim).

Next, in counts two, three, four, five and twelve of the complaint, Plaintiffs assert claims

---

[1]Plaintiffs also mention violations of 42 U.S.C. § 1988. Section 1988 does not provide for a separate cause of action. *See e.g., Rose v. Kenyon College*, 211 F. Supp. 2d 931, 939 (S.D. Ohio 2002). Section 1988 merely provides for the application of common law in civil rights proceedings brought under other statutes and for attorneys' fees and experts' fees in civil rights cases. *Id.*

under 42 U.S.C. § 1983. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In this case, Plaintiffs allege that they were unconstitutionally arrested, detained and denied a fair trial. (Doc. #10 pps. 70-81;91-92, ¶¶ 381-416; 467-70).

Section 1981, § 1983, and § 1985 do not contain their own statute of limitations. For federal statutes enacted prior to December 1 of 1990, when the statute does not contain its own statute of limitations the "settled practice was to adopt a local time limitation as federal law if it [was] not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) (footnote omitted); *Reed v. United Transportation Union*, 488 U.S. 319 (1989). The major concern is to find the limitations period that best effectuates "the federal policies at stake and the practicalities of litigation...." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 172 (1983).

Federal statutes enacted after December 1, 1990, that do not contain their own statute of limitations, are covered by a catch all 4-year statute of limitations for actions arising under federal statutes, 28 U.S.C. § 1658. Section 1981, 1983, and 1985 were all enacted prior to 1990. However, in 1991 Congress enacted the Civil Rights Act of 1991, 105 Stat. 1071, which, among, other things, amended § 1981 by adding a new subsection that defines the term "make and enforce contracts" to include the "termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), the Supreme Court held that causes of actions which were made possible by the 1991 amendment to section § 1981 are governed by the 4-year federal statute of limitations. *Id.* at 382. Specifically, it held that "hostile work environment, wrongful termination, and failure-to-transfer claims did not allege a violation of

the pre-1990 version of § 1981 but did allege violations of the" 1991 amendment to the statute and were governed by the 4-year statute of limitations. *Id.* at 383.

Plaintiffs contend they were denied their full and equal rights under the law. This conduct, if actionable under § 1981, was actionable under the original version of § 1981 and was not made possible by the 1991 amendment. The 4-year statute of limitations found in § 1658 therefore does not apply.

Instead, causes of action under § 1981, § 1983, and § 1985 are governed by "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)(§ 1981 case). *See also Wilson v. Garcia*, 471 U.S. 261, 268 (1985)(§ 1983 case); *Bell v. Fowler*, 99 F.3d 262, 265-266 (8th Cir. 1996)(§ 1985 case). In Arkansas, this is the three year personal injury statute of limitations, Ark. Code Ann. 16-56-105(3) (2005). *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001)(Ark. Code Ann. § 16-56-105(3) is the statute of limitations applicable to § 1983 cases); *Kaster v. State of Iowa*, 975 F.2d 1381, 1382 (8th Cir. 1992)(personal injury state statute of limitations applies to § 1985 cases); *Wagh v. Dennis*, 677 F.2d 666, 667 (8th Cir. 1982)(applying personal injury statute of limitations to § 1981 claim).

Section 1986 has its own statute of limitations. 42 U.S.C. § 1986. It provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." *Id. See also Hoagland v. Town of Clear Lake*, 415 F.3d 693, 700 (7th Cir. 2005).

Plaintiffs' civil rights causes of action accrued when they knew or had reason to know of the harm constituting the basis of the action. *Nasim v. Warden, Maryland House of Corrections*, 64 F.3d 951, 955 (4th Cir. 1995). The only alleged interaction between the Plaintiffs and the City of Mountain Pine and Robert Jester occurred in February and May of

2002. The alleged harm, if any, occurred on those dates. Accordingly, Plaintiffs had three years from May of 2002, on the § 1981, § 1983, and § 1985 claims to institute suit and one year from May of 2002 to institute suit on the § 1986 claim. This action was filed on June 23, 2005 (Doc. #1), after the expiration of the applicable limitation periods. Plaintiffs have alleged no facts which would toll the running of the limitation periods. Therefor, Plaintiffs civil rights claims under §§ 1981, 1983, 1985, and 1986 are barred.

In responding to the motion to dismiss, Plaintiffs argue that the delay caused by Jester and the City of Mountain Pine allowed Browning to institute the involuntary commitment action and to illegally obtain custody of Makayla. (Doc. #119). Even if true, this does not suggest these causes of action are not barred by the applicable statutes of limitations. The involuntary commitment occurred on February 15, 2002 (Doc. #10, ¶ 140), and Browning obtained the order of custody from the Garland County Court on February 27, 2002 (Doc. #10, ¶ 165).

Plaintiffs also contend the City of Mountain Pine and Jester remain liable for all acts in furtherance of the conspiracy unless they have abandoned the conspiracy and have informed those they conspired with of the abandonment or have informed law enforcement of the conspiracy and of their participation. (Doc. #119). They further argue that they were unaware of the various causes of action until a later time. Specifically, they state they had no knowledge of the facts that were at issue and were without any means to obtain knowledge of the facts.

We find these arguments unavailing. Plaintiffs were certainly aware of the involuntary commitment, of the final evaluation, of the initiation of the custody proceeding by Browning, and of the custody order entered by the Garland County Court. Plaintiffs' complaint is not saved by its naked assertion that the Defendants conspired to perpetuate or accomplish the actions of the other Defendants. A conspiracy claim requires allegations of specific facts showing a

meeting of the minds among the alleged conspirators. *Snelling v. Westhoff*, 972 F.2d 199, 200-01 (8th Cir. 1992)(en banc). No such specific factual allegations are found in the complaint with respect to Defendants the City of Mountain Pine and Jester.

In counts six through eleven and count thirteen Plaintiffs assert state law claims of: malicious prosecution, defamation, intentional infliction of emotional distress, false arrest and imprisonment, assault, battery and abuse of process. (Doc. #10; pp. 82-91, 92-95; ¶¶ 417-66, 471-87). From the face of the complaint, these claims are also barred by limitations.

In Arkansas a three year statute of limitations, Ark. Code Ann. § 16-56-105, applies to all tort actions not otherwise limited by law. *O'Mara v. Dykema*, 328 Ark. 310, 317, 942 S.W.2d 854 (1997). The three year statute applies to the malicious prosecution, intentional infliction of emotional distress, *McQuay v. Guntharp*, 336 Ark. 534, 542, 986 S.W.2d 850 (1999), and abuse of process claims. A one year statute of limitation applies to the defamation claim, Ark. Code Ann. § 16-56-104(3), the false arrest or imprisonment claim, Ark. Code Ann. § 16-56-104(2)(B), and the assault and battery claims, Ark. Code Ann. § 16-56-104(2)(A). The causes of action accrue when the wrong occurs and the right to commence the action comes into existence. *Courtney v. First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989); *Gibson v. Herring*, 63 Ark. App. 155, 975 S.W.2d 860 (1998).

As the last act of the City of Mountain Pine and Jester complained of, the failure of Jester to take action in response to receiving further documentation from the Plaintiffs, occurred in May of 2002, and Plaintiffs' complaint was not filed until June 23, 2005, Plaintiffs' claims are barred by the applicable state statutes of limitation. Plaintiffs have alleged no facts which would toll the running of the statutes.

## **CONCLUSION**

Accordingly, we recommend that the motion to dismiss of the separate Defendants the City of Mountain Pine and Robert Jester (Doc. #106) be granted and the complaint dismissed with prejudice as against these separate Defendants.

**The parties have ten days from receipt of this report and recommendations to file objections to the same pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of January 2006.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE