IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

G.W. DELANEY and
PHYLLIS DELANEY                   PLAINTIFFS

       v.          Civil No. 05-6045

GARY ASHCRAFT, Chief
of Police in his official and
individual capacity, et al                 DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the motion to dismiss the second amended complaint (hereinafter "complaint") filed by separate Defendants the City of Bowling Green, Kentucky, and Bill Waltrip, Chief of Police of Bowling Green. (Doc. #110). The motion has been referred to the undersigned for report and recommendation by order entered on December 20, 2005. (Doc. #117). The Plaintiffs, G. W. Delaney and Phyllis Delaney, filed a response to the motion to dismiss on December 28, 2005. (Doc. #121).

## BACKGROUND

The complaint is 95 pages in length including 487 numbered paragraphs. Attached to the complaint are 318 pages of exhibits. The complaint names 38 defendants including Movants. (Doc. #10).

Plaintiffs, residents of Kentucky, allege that they obtained an order of temporary custody of a minor child, Makayla, in September, 2001, in Bowling Green, Kentucky. Plaintiffs originally believed that the child was the offspring of their son. Plaintiffs learned through paternity testing that the father of the child was David Burton, also of Bowling Green, Kentucky.

Subsequently, Plaintiffs allowed the child to be taken to Garland County, Arkansas, by Phyllis Delaney's sister, Diane Browning. A custody battle then erupted, in Garland County, Arkansas, between Plaintiffs and Diane Browning when the child was not returned. During this dispute, the Plaintiffs attempted to enlist the assistance of local municipal and county law enforcement officers in regaining physical custody of the child but the officers refused to assist and, in fact, hindered Plaintiffs' efforts.

An involuntary commitment proceeding was initiated by Browning in Garland County on February 14, 2002. (Doc. #10 at ¶ 135). Browning obtained an order of involuntary commitment for Phyllis Delaney. Phyllis Delaney was released following an evaluation during which it was determined she did not meet the criteria for involuntary commitment. (Doc. #10, ¶ 162 & Exhibits 5-14).

Browning obtained a final order of custody of Makayla from the Garland County Circuit Court on February 27, 2002. (Doc. #10, ¶ 165). In the meantime, Plaintiffs had returned to Kentucky where Plaintiffs obtained a final order of custody from a Kentucky court on February 26, 2002.

On May 22, 2002, Plaintiffs further allege that they regained physical custody of the child by traveling to Arkansas and taking her from a daycare center in Hot Springs, Arkansas. (Doc. #10, ¶ 182). Plaintiffs allege that at the request of Detective Paul Norris of the Hot Springs Police Department warrants for their arrest for third degree battery, aggravated assault, and interference with custody were issued in Garland County.

On May 30, 2002, Plaintiffs allege a Warren County, Kentucky, Circuit Judge issued a second custody order reaffirming that they had custody of Makalya and were not to be arrested for

any foreign custody orders. (Doc. #10, ¶ 226). On June 9, 2002, Plaintiffs were arrested by the Bowling Green Police Department in Bowling Green, Kentucky, on the Arkansas warrants. (Doc. #10, ¶¶ 227-235). Plaintiffs were released on bond the following day. *Id.* at ¶ 236. Later, Defendant Oliver notified Kentucky authorities that he was no longer seeking the return of Plaintiffs to Arkansas.

On June 12, 2002, a Warren County District Court Judge issued a contempt charge against the Plaintiffs. (Doc. #10, ¶¶ 242-260). The Plaintiffs were arrested the second time on June 12, 2002. *Id.* at ¶ 261. Plaintiffs remained in the Warren County Regional Jail for seventeen days. *Id.* at ¶ 329.

Plaintiffs' causes of action against the Defendants are enumerated in what Plaintiffs refer to as thirteen separate "counts" beginning at ¶ 372 of the complaint and consist of federal civil rights and state law causes of action. Although these paragraphs identify some of the Defendants by name, they identify all of the Defendants generally as being liable under each cause of action asserted.

Plaintiffs contend that both arrests by the Bowling Green Police Department were based on false or fraudulent charges. Plaintiffs maintain the charges were designed to keep them locked up until they could be extradited to Arkansas.

**DISCUSSION**

Movants bring this motion to dismiss pursuant to Rule 12(b)(2),(3),(4),(5) and (6) of the Federal Rules of Civil Procedure alleging that this court lacks personal jurisdiction over them, venue is improper, insufficiency of service, and that the complaint fails to state a claim upon which relief may be granted. (Doc. #110). We find that this court lacks in personam jurisdiction over the Movants. Accordingly, the complaint should be dismissed as to them.

3

"To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). The nonmoving party "may do so by affidavits, exhibits, or other evidence." *Romak, USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004).

Although Plaintiffs' response to the Movants' motion to dismiss is not accompanied by affidavits, we note that the complaint is verified. "A party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647.

We conclude that this court lacks in personam jurisdiction over the Movants. Plaintiffs have asserted both § 1983 claims and state law false arrest and false imprisonment claims against the Movants. Section 1983 does not provide for nationwide service of process. When subject matter jurisdiction is based on a question of federal law and the federal statute does not provide for national service of process, courts must look to the forum state's long-arm statute to determine if the defendants are amendable to service of process, a prerequisite of personal jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 (1987). Therefor, the same analysis applies to determining whether this court has personal jurisdiction over the Movants in connection with both the federal and state law causes of action. *Webber v. Michela*, 633 F.2d 518 (8th Cir. 1980).

Jurisdiction may be exercised over a nonresident defendant "'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" *Romak USA, Inc., v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)(quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.l3d 1070, 1072 (8th Cir. 2004), *cert. denied,* ___ U.S. ___, 125 S. Ct. 1304, 161 L. Ed. 2d 108 (2005)). "Arkansas' long-arm statute extends jurisdiction over nonresidents to the maximum extent permitted by the Due Process Clause." *Epps v. Stewart Information Services, Corp.*, 327 F.3d 642, 647 (8th Cir. 2003);

see Ark. Code Ann. § 16-4-101 (Repl. 1999). Thus, the single question is whether the exercise of personal jurisdiction is consistent with the due process clause. *See, Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996); *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir. 1995).

"Due process requires sufficient 'minimum contacts' between the defendant and the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Epps*, 327 F.3d at 647 (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Defendant's contacts must be more than 'random, fortuitous, or attenuated.'" *Epps*, 327 F.3d at 648 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297.

"Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)(citation omitted). The Eighth Circuit has set forth five criteria to be considered in determining whether a defendant has minimum contacts with the forum state. *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)(*citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir. 1983)). These factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum

state in providing a forum for its residents; and (5) the convenience of the parties. *Id.* The first three of these factors are of "primary importance" in determining "the sufficiency of defendant's contacts." *Id. See also Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them), *cert. denied,* ___ U.S. ___, 125 S. Ct. 1304, 161 L. Ed. 2d 108 (2005).

The Eighth Circuit has also "elaborated on the third factor–the relationship of the cause of action to the contacts–to distinguish between specific and general jurisdiction." *Burlington Industries*, 97 F.3d at 1102 (citations omitted). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* at 1103 (citations omitted).

The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision." *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir.1987). Few answers to jurisdictional questions "will be written in black and white." *Burger King,* 471 U.S. at 486 n. 29 (internal quotation omitted).

When it is established that a defendant has purposefully established minimum contacts with the forum state, the court must then consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see also Dakota Indus. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389-90 (8th Cir. 1991) (applying same two-step analysis). In this analysis, the court may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute,""the plaintiff's interest in obtaining convenient and effective relief,""the interstate judicial system's interest in obtaining the

most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477 (*quoting World-Wide Volkswagen,* 444 U.S. at 292).

Applying these principles, we find that Movants' contacts with this state, as alleged in the complaint, were, at most "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475. Plaintiffs do not allege that Movants ever visited Arkansas. The only contacts by Movants with Arkansas, alleged, are that Movants arrested the Plaintiffs the first time based on Arkansas warrants. *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997)(contacts with state consist of phone calls and letters–"Such contacts are not ordinarily sufficient by themselves to support the exercise of personal jurisdiction with respect to a defendant."); *Olagues v. Stafford*, 316 F. Supp. 2d 393 (E.D. La. 2004)(California officials instrumental in having plaintiffs arrested in Louisiana were not subject to personal jurisdiction in Louisiana). Further, at the time that Movants allegedly committed the complained of acts, Plaintiffs, who are Kentucky residents, were also physically present in Kentucky. Finally, Plaintiffs' allegations against Movants center upon the claim that Movants participated in actions, in *Kentucky*, which resulted in the Plaintiffs being arrested and held for certain periods of time in *Kentucky*. We do not believe that such contacts would cause Movants to "reasonably anticipate being haled into court" in *Arkansas*. *World-Wide Volkswagen,* 444 U.S. at 297.

Such circumstances can not support a finding of specific personal jurisdiction. *First National Bank of Lewisville, Arkansas v. First National Bank of Clinton, Kentucky*, 258 F.3d 727, 729 (8th Cir. 2001)(no personal jurisdiction over out of state bank where its only contacts with Arkansas were issuing a cashier's check jointly payable to two Arkansas residents and telephone communication with plaintiff, an Arkansas bank, concerning proper endorsement or the check). Application of the jurisdictional factors set forth by the Supreme Court reinforces the conclusion

that personal jurisdiction over Movants is lacking. Movants' contacts with this state, according to the complaint, were few and scant, of poor quality, and had little relation to the thirteen causes of action asserted in the complaint; any interest of this state in providing a forum for its residents is not met because Plaintiffs and Movants are not residents of this state; and, this district will be an inconvenient forum for all of these Kentucky residents.

Plaintiffs' complaint is not saved by the general and naked assertions that Movants conspired with others to perpetrate or accomplish certain wrongful acts. A conspiracy claim requires allegations of specific facts showing a meeting of the minds among the alleged conspirators. *Snelling v. Westhoff*, 972 F.2d 199, 200-01 (8th Cir. 1992)(en banc). No such specific factual allegations are found in the complaint with respect to Movants.

Further, general personal jurisdiction over Movants does not exist because Movants have no "continuous and systematic contacts" with Arkansas unrelated to the facts of this case. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004); *see also Epps v. Stewart Information Services, Corp.*, 327 F.3d at 648 (general personal jurisdiction exists when "the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state.").

## CONCLUSION

We conclude, therefor, that this court lacks in personam jurisdiction over the Movants, the City of Bowling Green, Kentucky, and Bill Waltrip, and recommend that the second amended complaint be dismissed without prejudice to Plaintiffs filing the complaint in a jurisdiction which possesses personal jurisdiction over Movants.

**The parties have ten days from receipt of this report and recommendations to file objections to the same pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections**

8

**may result in waiver of the right to appeal questions of fact. The parties are reminded that**

**objections must be both timely and specific to trigger de novo review by the**

**district court.**

        DATED this 20th day of January 2006.

                                                /s/ Bobby E. Shepherd
                                                UNITED STATES MAGISTRATE JUDGE