IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

G.W. DELANEY and
PHYLLIS DELANEY                                                              PLAINTIFFS

       v.               Civil No. 05-6045

GARY ASHCRAFT, Chief
of Police in his official and
individual capacity, et al                                                    DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the undersigned for report and recommendation is the motion to dismiss the second amended complaint (hereinafter "complaint") filed by separate Defendants the Commonwealth of Kentucky, Warren County Circuit Court Clerk Pat Goad, and Deputy Clerks Olivia Hazel, Becky Miller, and Sonja (last name unknown)(Movants). (Doc. #153). The motion has been referred to the undersigned for report and recommendation by order entered on January 31, 2006. (Doc. #157). To date, the Plaintiffs, G. W. Delaney and Phyllis Delaney, have not filed a response. The time allowed to respond to the motion as set forth in Rule 7.2(b) of the Local Rules for the Eastern and Western Districts of Arkansas has expired.

Also before the undersigned is the motion to dismiss filed by the separate Defendant Shelia Warwick (Movant), a Deputy Clerk of the Commonwealth of Kentucky Warren County Circuit Court. (Doc. #161). The motion has been referred to the undersigned for report and recommendation by order entered on February 6, 2006. (Doc. #164). To date, the Plaintiffs, G. W. Delaney and Phyllis Delaney, have not filed a response. The time allowed to respond to the

AO72A
(Rev. 8/82)

motion as set forth in Rule 7.2(b) of the Local Rules for the Eastern and Western Districts of Arkansas has expired.

## BACKGROUND

This case was filed on June 23, 2005. Plaintiffs' second amended complaint[1] was filed on October 7, 2005. (Doc. #10). The second amended complaint is 95 pages in length including 487 numbered paragraphs. Attached to the complaint are 318 pages of exhibits. The complaint names 38 defendants including Movants. (Doc. #10).

Plaintiffs, residents of Kentucky, allege that they obtained an order of temporary custody of a minor child, Makayla, in September, 2001, in Bowling Green, Kentucky. (Doc. #10 at ¶ 67). Plaintiffs originally believed that the child was the offspring of their son. Plaintiffs learned through paternity testing that the father of the child was David Burton, also of Bowling Green, Kentucky.

Subsequently, Plaintiffs allowed the child to be taken to Garland County, Arkansas, by Phyllis Delaney's sister, Diane Browning. A custody battle then erupted, in Garland County, Arkansas, between Plaintiffs and Diane Browning when the child was not returned. During this dispute, the Plaintiffs attempted to enlist the assistance of local municipal and county law enforcement officers in regaining physical custody of the child but the officers refused to assist and, in fact, hindered Plaintiffs' efforts.

---

[1]The original complaint was filed on June 23, 2005. Along with the complaint, the Plaintiffs filed an application to proceed *in forma pauperis* (IFP) (Doc. #2). That same day, a report and recommendation was entered recommending denial of the application to proceed IFP (Doc. #4). The report was adopted on July 18, 2005 (Doc. #5), and the filing fee paid the same day. An amended complaint was filed on August 24, 2005 (Doc. #8), and the second amended complaint was filed on October 7, 2005 (Doc. #10). Plaintiffs refer to this complaint in various documents as a "third amended complaint," *see e.g.,* (Doc. # 12 & Doc. #15 motion and amended motion to extend time to serve third amended complaint). This language is also used in the court's order of October 17, 2005 (Doc. #16). The pleading in question is in actuality not Plaintiffs' third amended complaint but their *second* amended complaint.

AO72A
(Rev. 8/82)

An involuntary commitment proceeding was initiated by Browning in Garland County on February 14, 2002. (Doc. #10 at ¶ 135). Browning obtained an order of involuntary commitment for Phyllis Delaney. Phyllis Delaney was released following an evaluation during which it was determined she did not meet the criteria for involuntary commitment. (Doc. #10, ¶ 162 & Exhibits 5-14).

Browning obtained a final order of custody of Makayla from the Garland County Circuit Court on February 27, 2002. (Doc. #10, ¶ 165). In the meantime, Plaintiffs had returned to Kentucky where Plaintiffs obtained a final order of custody from a Kentucky court on February 26, 2002.

Plaintiffs further allege that on May 22, 2002 they regained physical custody of the child by traveling to Arkansas and taking her from a daycare center in Hot Springs, Arkansas. (Doc. #10, ¶ 182). Plaintiffs allege that at the request of Detective Paul Norris of the Hot Springs Police Department warrants for their arrest for third degree battery, aggravated assault, and interference with custody were issued in Garland County.

Plaintiffs allege that on May 30, 2002, a Warren County, Kentucky, Circuit Judge issued a second custody order reaffirming that they had custody of Makayla and were not to be arrested on any foreign custody orders. (Doc. #10, ¶ 226). On June 9, 2002, Plaintiffs were arrested by the Bowling Green Police Department in Bowling Green, Kentucky, on the Arkansas warrants. (Doc. #10, ¶¶ 227-235). Makayla was taken by officers at the scene. (Doc. #10 at ¶¶ 232-233). Plaintiffs were released on bond the following day. *Id.* at ¶ 236.

On June 11, 2002, Plaintiffs understood a custody hearing was to be held in the Warren County Circuit Court to determine if custody of Makayla should be returned to the Plaintiffs.

(Doc. #10 at ¶¶ 239-240). David Burton attended the hearing and was arrested on a warrant for not paying child support and on a failure to appear warrant. *Id.* at ¶ 241.

Plaintiffs allege that on June 12, 2002, the hearing was closed to the public by court personnel "to instigate a criminal contempt charge to deliberately incarcerate us until Arkansas could extradite and aid the Burton's in getting custody." *Id.* at ¶ 242. According to Plaintiffs, Becky Miller informed Judge Joann Coleman that the Plaintiffs had told a totally different story in Judge Huddleston's court on the prior day. *Id.* at ¶ 244. Plaintiffs allege they did not testify in Judge Huddleston's court on June 11, 2002. *Id.*

According to the complaint, Michael Burton was brought in front of the judge on assault charges and David Burton was brought in front of the judge on the failure to appear charge and nonpayment of child custody charge. (Doc. #10 at ¶¶ 243-246). David Burton is alleged to have discussed with Judge Coleman the extradition warrants from Arkansas, the custody of Makayla, and accused the Plaintiffs of lying to the Judge. *Id.* at ¶ 245. Despite the charges against him and his failure to pay the child support, Plaintiffs assert that David Burton was allowed to walk out with his father, Michael Burton. *Id.* at ¶ 248.

The Plaintiffs allege that prior to the June 12th hearing, David and Michael Burton were in contact with Diane Browning. (Doc. #10 at ¶ 252). Further, Plaintiffs allege that Burton's attorney, Phil Kimbel had talked to Arkansas about the extradition warrants and had provided documents to help get the Plaintiffs incarcerated the second time so Arkansas could extradite the Plaintiffs. *Id.*

Plaintiffs allege that Judge Joann Coleman, Warren County District Court, and court personnel, among others, worked to subvert the judicial process "in concert with Arkansas" to

AO72A
(Rev. 8/82)

arrest the Plaintiffs a second time and keep them in jail on "bogus charges" until they could be extradited to Arkansas. (Doc. #10 at ¶ 254). Plaintiffs allege that they were scheduled for a contempt hearing at 4:00 p.m. on June 12, 2002, and that Olivia Hazel and Pat Goad blocked them for months from being able to get a transcript. *Id.* at ¶ 258).

On June 12, 2002, the Plaintiffs were arrested the second time on contempt charges. (Doc. #10 at ¶ 261). Plaintiffs allege that Judge Coleman and court personnel had repeated communications "with Arkansas individuals which were critical" of the Plaintiffs and "instigated the second arrest." *Id.* at ¶ 267. Plaintiffs allege that Becky Miller, Shelia Warwick, Sonja (last name unknown), and others colluded with Judge Coleman and Michael and David Burton to imprison the Plaintiffs until they could be extradited and to aid David Burton in gaining custody of Makayla so he would not have to pay child support. *Id.* at ¶ 395.

Plaintiffs allege that among others the Warren County Circuit Court personnel "played an active part in the initiation and continuation of criminal and civil proceedings" against the Plaintiffs. *Id.* at ¶ 419. Additionally, Plaintiffs allege that the Warren County Court Personnel denied them their Sixth Amendment right to petition the courts for redress of their grievances. *Id.* at ¶ ¶ 467-468.

Plaintiffs remained in the Warren County Regional Jail until June 27, 2002, when they were released on a writ of habeas corpus. *Id.* at ¶ 329. Plaintiffs allege that on July 22, 2002, Terri Harris, Chief Deputy Prosecuting Attorney for the 18th Judicial District East, Hot Springs, Arkansas, sent a letter to Judge Coleman stating they would not be requesting rendition of the Plaintiffs. (Doc. #10 at ¶ 331). It is also alleged that Steve Oliver, Prosecuting Attorney, Hot

AO72A
(Rev. 8/82)

Springs, Arkansas, made the decision not to extradite Plaintiffs but to leave the arrest warrants outstanding. *Id.* at ¶ 333.

Plaintiffs' causes of action against the Defendants are enumerated in what Plaintiffs refer to as thirteen separate "counts" beginning at ¶ 372 of the complaint and consist of federal civil rights and state law causes of action. Although these paragraphs identify some of the Defendants by name, they identify all of the Defendants generally as being liable under each cause of action asserted.

## DISCUSSION

Movants bring this motion to dismiss pursuant to Rule 12(b)(1), (2), (3) and (6) of the Federal Rules of Civil Procedure. Movants maintain that this court lacks subject matter jurisdiction because of the Rooker-Feldman doctrine, lacks personal jurisdiction over them, venue is improper, the complaint is barred in part by Kentucky's sovereign immunity and the Eleventh Amendment to the Constitution of the United States, and that the complaint fails to state a claim upon which relief may be granted inasmuch as the claims are barred by judicial immunity and the applicable statute of limitations. (Doc. #153 & Doc. #161).

We find that this court lacks in personam jurisdiction over the Movants. Accordingly, the complaint should be dismissed as to them. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Information Services Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). The nonmoving party "may do so by affidavits, exhibits, or other evidence." *Romak, USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004).

AO72A
(Rev. 8/82)

Although Plaintiffs did not respond to the motions to dismiss, we note that the complaint is verified. "A party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Epps*, 327 F.3d at 647.

Plaintiffs have asserted both § 1983 claims and state law malicious prosecution claims against the Movants. Section 1983 does not provide for nationwide service of process. When subject matter jurisdiction is based on a question of federal law and the federal statute does not provide for national service of process, courts must look to the forum state's long-arm statute to determine if the defendants are amendable to service of process, a prerequisite of personal jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 (1987). Therefor, the same analysis applies to determining whether this court has personal jurisdiction over the Movants in connection with both the federal and state law causes of action. *Webber v. Michela*, 633 F.2d 518 (8th Cir. 1980).

Jurisdiction may be exercised over a nonresident defendant "'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'" *Romak USA, Inc.*, *v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004)(quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.l3d 1070, 1072 (8th Cir. 2004), *cert. denied,* ___ U.S. ___, 125 S. Ct. 1304, 161 L. Ed. 2d 108 (2005)). "Arkansas' long-arm statute extends jurisdiction over nonresidents to the maximum extent permitted by the Due Process Clause." *Epps v. Stewart Information Services, Corp.*, 327 F.3d 642, 647 (8th Cir. 2003); see Ark. Code Ann. § 16-4-101 (Repl. 1999). Thus, the single question is whether the exercise of personal jurisdiction is consistent with the due process clause.

AO72A
(Rev. 8/82)

*See, Burlington Industries, Inc. v. Maples Industries, Inc.,* 97 F.3d 1100, 1102 (8th Cir. 1996); *Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir. 1995).

"Due process requires sufficient 'minimum contacts' between the defendant and the forum state so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Epps*, 327 F.3d at 647 (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "Defendant's contacts must be more than 'random, fortuitous, or attenuated.'" *Epps*, 327 F.3d at 648 (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen,* 444 U.S. at 297.

"Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable time immediately prior to the filing of the lawsuit." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)(citation omitted). The Eighth Circuit has set forth five criteria to be considered in determining whether a defendant has minimum contacts with the forum state. *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)(*citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc.,* 708 F.2d 1338, 1340 (8th Cir. 1983)). These factors are: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Id.* The first three of these factors are of "primary importance" in

determining "the sufficiency of defendant's contacts." *Id. See also Dever v. Hentzen Coatings, Inc.,* 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them), *cert. denied,* ___ U.S. ___, 125 S. Ct. 1304, 161 L. Ed. 2d 108 (2005).

The Eighth Circuit has also "elaborated on the third factor–the relationship of the cause of action to the contacts–to distinguish between specific and general jurisdiction." *Burlington Industries*, 97 F.3d at 1102 (citations omitted). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state while general jurisdiction refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose." *Id.* at 1103 (citations omitted).

The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision." *Austad Co. v. Pennie & Edmonds,* 823 F.2d 223, 226 (8th Cir.1987). Few answers to jurisdictional questions "will be written in black and white." *Burger King,* 471 U.S. at 486 n. 29 (internal quotation omitted).

When it is established that a defendant has purposefully established minimum contacts with the forum state, the court must then consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (*quoting International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see also Dakota Indus. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1389-90 (8th Cir. 1991) (applying same two-step analysis). In this analysis, the court may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute,""the plaintiff's interest in obtaining convenient and effective relief,""the interstate

AO72A
(Rev. 8/82)

judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King,* 471 U.S. at 477 (*quoting World-Wide Volkswagen,* 444 U.S. at 292).

Applying these principles, we find that Movants' contacts with this state, as alleged in the complaint, were, at most "random, fortuitous, or attenuated." *Burger King*, 471 U.S. at 475. Plaintiffs do not allege that Movants ever visited Arkansas. The only contacts by Movants with Arkansas, alleged, are that following the Plaintiffs' arrest on warrants from Arkansas Plaintiffs appeared in court in Kentucky and the Movants, Kentucky court personnel, are alleged to have communicated with Arkansas regarding the Plaintiffs' arrest and subsequent court appearance. *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997)(contacts with state consist of phone calls and letters–"Such contacts are not ordinarily sufficient by themselves to support the exercise of personal jurisdiction with respect to a defendant."); *Olagues v. Stafford*, 316 F. Supp. 2d 393 (E.D. La. 2004)(California officials instrumental in having plaintiffs arrested in Louisiana were not subject to personal jurisdiction in Louisiana). Further, at the time that Movants allegedly committed the complained of acts, Plaintiffs, who are Kentucky residents, were also physically present in Kentucky. Finally, Plaintiffs' allegations against Movants center upon the claim that Movants participated in actions, in *Kentucky*, which resulted in the Plaintiffs being arrested and held for certain periods of time in *Kentucky*. We do not believe that such contacts would cause Movants to "reasonably anticipate being haled into court" in *Arkansas*. *World-Wide Volkswagen,* 444 U.S. at 297.

Such circumstances can not support a finding of specific personal jurisdiction. *First National Bank of Lewisville, Arkansas v. First National Bank of Clinton, Kentucky*, 258 F.3d

AO72A
(Rev. 8/82)

727, 729 (8th Cir. 2001)(no personal jurisdiction over out of state bank where its only contacts with Arkansas were issuing a cashier's check jointly payable to two Arkansas residents and telephone communication with plaintiff, an Arkansas bank, concerning proper endorsement or the check). Application of the jurisdictional factors set forth by the Supreme Court reinforces the conclusion that personal jurisdiction over Movants is lacking. Movants' contacts with this state, according to the complaint, were few and scant, of poor quality, and had little relation to the thirteen causes of action asserted in the complaint; any interest of this state in providing a forum for its residents is not met because Plaintiffs and Movants are not residents of this state; and, this district will be an inconvenient forum for all of these Kentucky residents.

Plaintiffs' complaint is not saved by the general and naked assertions that Movants conspired with others to perpetrate or accomplish certain wrongful acts. A conspiracy claim requires allegations of specific facts showing a meeting of the minds among the alleged conspirators. *Snelling v. Westhoff*, 972 F.2d 199, 200-01 (8th Cir. 1992)(en banc). No such specific factual allegations are found in the complaint with respect to Movants.

Further, general personal jurisdiction over Movants does not exist because Movants have no "continuous and systematic contacts" with Arkansas unrelated to the facts of this case. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004); *see also Epps v. Stewart Information Services, Corp.*, 327 F.3d at 648 (general personal jurisdiction exists when "the exercise of jurisdiction does not depend on the relationship between the cause of action and the defendant's contacts with the forum state.").

AO72A
(Rev. 8/82)

## **CONCLUSION**

We conclude, therefor, that this court lacks in personam jurisdiction over the Movants, the Commonwealth of Kentucky, the Warren County Circuit Court Clerk Pat Goad, Deputy Clerk Olivia Hazel, Deputy Clerk Becky Miller, Deputy Clerk Sonja (last name unknown), and Deputy Clerk Shelia Warwick and recommend that the second amended complaint be dismissed without prejudice to Plaintiffs filing the complaint in a jurisdiction which possesses personal jurisdiction over Movants.

**The parties have ten days from receipt of this report and recommendations to file objections to the same pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of March 2006.

/s/ Bobby E. Shepherd
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)