IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

G.W. DELANEY and
PHYLLIS DELANEY                                                      PLAINTIFFS

                v.                              Civil No. 05-6045

GARY ASHCRAFT, Chief
of Police in his official and
individual capacity, et al                                           DEFENDANTS

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

On March 6, 2006, separate Defendants the City of Hot Springs, Arkansas, Gary Ashcraft, and Paul Norris (Movants) filed a motion for judgment on the pleadings (Doc. #178). That same day, the motion was referred to the undersigned for report and recommendation (Doc. #180). On April 4, 2006, the Plaintiffs G. W. Delaney and Phyllis Delaney responded to the motion (Doc. #198). On April 10, 2006, Movants filed a reply (Doc. #204). On April 21, 2006, Plaintiffs filed a second response (Doc. #212).

### APPLICABLE STANDARD and BACKGROUND

Movants bring this motion to dismiss pursuant to the provisions of Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. Movants contend Plaintiffs have failed to allege the prima facie elements of a claim under 42 U.S.C. § 1981. They next contend that all other federal and state claims are barred by the applicable statutes of limitation.

"On a motion for judgment on the pleadings, a court applies the same standard as in a 12(b)(6) motion for failure to state a claim." *Glover v. Merck & Co., Inc.*, 345 F. Supp. 2d 994, 996 (D. Minn. 2004)(*citing St. Paul Ramsey County Medical Ctr. v. Pennington County, S.D.*, 857 F.2d 1185, 1187 (8th Cir. 1988)). In considering a motion to dismiss for failure to state a claim, we must

construe the complaint liberally in favor of the plaintiffs and accept the allegations of the complaint as true. *Hudson v. Norris*, 227 F.3d 1047, 1054 (8th Cir. 2000).

Plaintiffs proceed pro se. The court should not dismiss a pro se complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Holloway v. Lockhart*, 792 F.2d 760, 761-62 (8th Cir. 1986)(citations omitted). Nevertheless, in treating the factual allegations of the complaint as true pursuant to Rule 12(b)(6), the court "do[es] not ... blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990)(citations omitted).

Plaintiffs have submitted to the court for consideration matters outside the pleadings. *See* (Doc. #200, #202, & #203–affidavits). When ruling on either a Rule 12(b)(6) motion or a Rule 12(c) motion, the court must generally ignore matters outside the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). If the court *considers* evidence outside the pleadings, it must normally convert the motion into a summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003).

However, the court may consider, without converting the motion to a summary judgment motion, exhibits attached to the complaint, materials that are necessarily embraced by the complaint, and materials that are part of the public record. *See Mattes*, 323 F.3d at 698 (in deciding a motion to dismiss, the court may consider exhibits to the complaint and materials embraced by the complaint); *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)("When deciding a motion to dismiss, a court may consider the complaint and documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.")(citations omitted); *Faibisch v. University of Minnesota*, 304 F.3d 797, 802 (8th Cir. 2002)("When deciding Rule 12(c) motions, however, courts may rely on matters within the public

record."); *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)(court may consider "some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings")(internal quotations and citations omitted).

In connection with the pending motion to dismiss, the court will consider only the complaint and the exhibits to the complaint. The court will not consider the affidavits (Doc. #200, Doc. #202, & Doc. #203) submitted with the Plaintiffs' response. It is therefor not necessary to convert the motion to dismiss into a summary judgment motion. *See e.g., Surgical Synergies, Inc. v. Genesee Associates, Inc.*, 432 F.3d 870 (8th Cir. 2005)("Where the district court considers matters outside the pleadings, a motion for judgment on the pleadings 'shall be treated as one for summary judgment.' Fed. R. Civ. P. 12(c)."); *Berthold Types Ltd. v. Adobe Systems, Inc.*, 242 F.3d 772, 776 (7th Cir. 2001)("A motion to dismiss must be *treated* as a motion for summary judgment if the judge *considers* matters outside the complaint, but the judge may elect to treat a motion as what it purports to be and disregard the additional papers.").

This case was filed on June 23, 2005. Plaintiffs' second amended complaint[1] was filed on October 7, 2005. (Doc. #10). Plaintiffs' second amended complaint is 95 pages in length including 487 numbered paragraphs accompanied by 318 pages of exhibits. The complaint names 38 Defendants including the Movants (Doc. #10).

---

[1] The original complaint was filed on June 23, 2005. Along with the complaint, the Plaintiffs filed an application to proceed *in forma pauperis* (IFP) (Doc. #2). That same day, a report and recommendation was entered recommending denial of the application to proceed IFP (Doc. #4). The report was adopted on July 18, 2005 (Doc. #5), and the filing fee paid the same day. An amended complaint was filed on August 24, 2005 (Doc. #8), and the second amended complaint was filed on October 7, 2005 (Doc. #10). Plaintiffs refer to this complaint in various documents as a "third amended complaint," *see e.g.,* (Doc. # 12 & Doc. #15 motion and amended motion to extend time to serve third amended complaint). This language is also used in the court's order of October 17, 2005 (Doc. #16). The pleading in question is in actuality not Plaintiffs' third amended complaint but their *second* amended complaint.

Gary Ashcraft is the Chief of the Hot Springs Police Department. (Doc. #10 at ¶ 21). Paul Norris is a detective with the Hot Springs Police Department. (Doc. #10 at ¶ 24).

Plaintiffs who are residents of Kentucky have filed this lawsuit against Movants and various other defendants who had some connection with, or involvement in, the events surrounding a custody dispute over a minor child, Makayla. Plaintiffs, who believed that the child was the offspring of their son, began caring for Makayla in February of 1999. (Doc. #10 at ¶ 55 & ¶ 57). Plaintiffs allege that they learned through paternity testing in August of 1999 that the father of the child was David Burton of Bowling Green, Kentucky. (Doc. #10 at ¶ 59). Plaintiffs allege that they obtained an order of temporary custody of Makayla in December of 1999 and were named de facto custodians of the child in September of 2001 in Bowling Green, Kentucky. (Doc. #10 at ¶ 66 & ¶ 67).

Beginning in March of 2000, Plaintiffs allowed the child to be taken to Garland County, Arkansas, by Phyllis Delaney's sister, Diane Browning. (Doc. #10 at ¶¶ 68-83). Plaintiffs allege that they were awarded permanent sole custody of Makayla on January 30, 2002. (Doc. #10 at ¶ 84). A custody battle then erupted between Plaintiffs and Diane Browning when the child was not returned to them by Browning on February 9, 2002. (Doc. #10 at ¶¶ 84-97).

Plaintiffs went to Mountain Pine, Arkansas, on February 14, 2002, where Browning lived and attempted to enlist the assistance of local law enforcement officers in regaining physical custody of the child but the officers refused to assist and, in fact, hindered Plaintiffs' efforts. (Doc. #10 at ¶¶ 106-123). An involuntary commitment proceeding was initiated by Browning in Garland County on February 14, 2002. (Doc. #10 at ¶ 135). Browning obtained an order of involuntary commitment for Phyllis Delaney on February 15th. (Doc. #10 at ¶ 140). Phyllis Delaney was released following an evaluation during which it was determined she did not meet the criteria for involuntary commitment. (Doc. #10, ¶ 162 & Exhibits 5-14).

4

Browning filed a petition for custody and emergency ex parte relief in the Garland County Circuit Court on February 15, 2002. (Doc. #10 at ¶ 125). Browning was giving emergency custody of Makayla that day. (Doc. #10 at ¶ 134). Browning obtained a final order of custody of Makayla from the Garland County Circuit Court on February 27, 2002. (Doc. #10, ¶ 133 & ¶ 165).

Plaintiffs allege that they went to the Hot Springs Police Department in April of 2002. (Doc. #10 at ¶ 179). Plaintiffs assert they were told by a "police officer that they were aware of what my sister did. But they refused to do anything about it." (Doc. #10 at ¶ 179).

Plaintiffs further allege that on May 22, 2002, they regained physical custody of the child by traveling to Arkansas and taking her from a daycare center in Hot Springs, Arkansas. (Doc. #10, ¶ 182). Plaintiffs maintain the witnesses to their taking of Makayla from the daycare were coached by the Hot Springs Police Department into making false statements. (Doc. #10 at ¶ 191). Plaintiffs allege that Detective Paul Norris made false statements in an affidavit constituting probable cause for the issuance of an arrest warrant. (Doc. #10 at ¶ 196 & ¶ 207). Plaintiffs allege Norris intentionally fabricated the information in the warrant application and police reports. (Doc. #10 at ¶ 211).

The supplemental narrative submitted by Plaintiffs as exhibit 84 indicates Norris did follow up interviews on May 23, 2002. (Doc. #10, Exhibit 84). The affidavit of facts constituting probable cause was executed by Norris on May 23, 2002. (Doc. #10, Exhibits 90 & 91). The arrest warrants for aggravated assault, third degree battery, and interference with child custody are dated May 23, 2002. (Doc. #10, Exhibits 99-104).

Plaintiffs allege a Warren County, Kentucky, Circuit Judge issued a second custody order on May 30, 2002, reaffirming that they had custody of Makalya and were not to be arrested based on any foreign custody orders. (Doc. #10, ¶ 226). Plaintiffs were arrested on June 9, 2002, by the

5

Bowling Green Police Department in Bowling Green, Kentucky, on the Arkansas warrants. (Doc. #10, ¶¶ 227-235). Plaintiffs were released on bond the following day. (Doc. #10 at ¶ 236). Later, Defendant Oliver notified Kentucky authorities that he was no longer seeking the return of Plaintiffs to Arkansas.

A Warren County District Court Judge issued a contempt charge against the Plaintiffs on June 12, 2002. (Doc. #10, ¶¶ 242-260). The Plaintiffs were arrested the second time on June 12, 2002. *Id.* at ¶ 261. Plaintiffs allege that they remained in the Warren County Regional Jail for seventeen days. *Id.* at ¶ 329. On July 22, 2002, Plaintiffs allege the prosecuting attorney for the Eighteenth Judicial District East, Hot Springs, Arkansas, sent a letter to the Warren County Court advising the court that the decision had been made not to extradite the Plaintiffs. (Doc. #10 at ¶¶ 331-332).

Plaintiffs allege that they called the Hot Springs Police Department on July 23, 2002, and were told by Norris that the warrants were still active and that governor's warrants were in the process to get the Plaintiffs extradited. (Doc. #10 at ¶ 334). Plaintiffs allege that they were told in September of 2002, December of 2002, and February of 2003, by the Hot Springs Police Department that there were still active warrants for their arrest. (Doc. #10 at ¶¶ 340-342). Finally, Plaintiffs state that they learned on September 13, 2003, through a private investigator they hired, that the warrants had been voided that day. (Doc. #10, ¶¶ 359-361).

## DISCUSSION

As noted above, Movants contend Plaintiffs have failed to allege the prima facie elements of a claim under 42 U.S.C. § 1981. They next contend that all other federal and state claims are barred by the applicable statutes of limitation.

### *§ 1981–Failure to State a Claim*

In count one, Plaintiffs purport to allege a claim against all Defendants pursuant to 42 U.S.C. § 1981. (Doc. #10, pps. 68-70, ¶¶ 372-380). Section 1981 "provides that all persons shall have the same right to 'make and enforce contracts' and the right to 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004)(quoting 42 U.S.C. § 1981(a)-(b)).

To establish a prima facie case of discrimination under § 1981, Plaintiffs must show that: (1) they are members of a protected class; (2) the defendants intended to discriminate on a constitutionally prohibited basis; and (3) that the discrimination interfered with a protected activity as defined in § 1981. *Bediako v. Stein Mart, Inc.*, 354 F.3d at 839. Further, a showing of state action is required. *Adams v. Boy Scouts of America-Chickasaw Council*, 271 F.3d 769, 777 (8th Cir. 2001)(citing *Youngblood v. Hy-Vee Food Stores, Inc.*, 266 F.3d 851, 855 (8th Cir. 2001)).

Section 1981 protects the following activities: (1) the right to make and enforce contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments. 42 U.S.C. § 1981(a). *See also Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989).

Plaintiffs assert that the activities of the Defendants were "an unlawful infringement of plaintiffs' right to enforce contracts and be parties to private litigation, without interference by defendants under color of law." (Doc.# 10 at ¶ 375). Plaintiffs assert they are members of a protected class and Defendants acted with intent to deprive them of their federal constitutional rights. (Doc. #10 at ¶ 376).

Although Plaintiffs allege that the "conduct of all Defendants amount to a violation of" § 1981, the complaint contains no specific allegations that Movants interfered with Plaintiffs' ability

7

to enter into, enforce, or terminate a contractual relationship. Moreover, there is no allegation that Movants interfered with Plaintiffs' ability to sue, be parties, or give evidence. In short, there are no allegations that Movants interfered in anyway with Plaintiffs' participation in a "protected activity."

"Even though civil-rights pleadings are viewed liberally, '[s]uch pleadings must nonetheless not be conclusory and must set forth the claim in a manner which, taking the pleaded facts as true, states a claim as a matter of law.'" *Bediako*, 354 F.3d at 839 (quoting *Nickens v. White*, 536 F.2d 802, 803 (8th Cir. 1976). Accordingly, Plaintiffs' § 1981 claim, couched as it is only terms of conclusory allegations should be dismissed as against Movants.

### *Statutes of Limitation*

Movants next assert that all other federal and state claims are subject to dismissal as the complaint reveals, on its face, that Plaintiffs' claims are barred by limitations. We agree that certain of the claims are barred. However, we do not agree that all claims are barred.

Plaintiffs' causes of action against Movants and the other Defendants are enumerated in what Plaintiffs refer to as thirteen separate "counts" beginning at paragraph 372 of the complaint. Plaintiffs allege categorically that all of the Defendants are liable under each cause of action.

Under count one, in addition to mentioning violations of § 1981 which was dealt with above, Plaintiffs allude to alleged violations, by the Defendants, of 42 U.S.C. § § 1985 & 1986.[2] A claim under 42 U.S.C. § 1985 is premised upon the existence of an alleged conspiracy which must be motivated by a class-based animus. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268-69 (1993). Liability under 42 U.S.C. § 1986 is based upon a defendant's neglect or refusal to prevent

---

[2]Plaintiffs also mention violations of 42 U.S.C. § 1988. Section 1988 does not provide for a separate cause of action. *See e.g., Rose v. Kenyon College*, 211 F. Supp. 2d 931, 939 (S.D. Ohio 2002). Section 1988 merely provides for the application of common law in civil rights proceedings brought under other statutes and for attorneys' fees and experts' fees in civil rights cases. *Id.*

a § 1985 conspiracy. *See Steele v. City of Bemidji*, 257 F.3d 902, 906 (8th Cir. 2001), *citing Brandon v. Lotter*, 157 F. 3d 537, 539 (8th Cir. 1998); *see also Gatlin v. Green*, 362 F.3d 1089, 1095 (8th Cir. 2004)(a section 1986 claim must be predicated upon a valid section 1985 claim).

Next, in counts two, three, four, five and twelve of the complaint, Plaintiffs assert claims under 42 U.S.C. § 1983. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In this case, Plaintiffs allege that they were unconstitutionally arrested, detained and denied a fair trial. (Doc. #10 pps. 70-81;91-92, ¶¶ 381-416; 467-70).

Section 1983 and § 1985 do not contain their own statute of limitations. For federal statutes enacted prior to December 1 of 1990, when the statute does not contain its own statute of limitations the "settled practice was to adopt a local time limitation as federal law if it [was] not inconsistent with federal law or policy to do so." *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985) (footnote omitted); *Reed v. United Transportation Union*, 488 U.S. 319 (1989). The major concern is to find the limitations period that best effectuates "the federal policies at stake and the practicalities of litigation...." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 172 (1983).

Federal statutes enacted after December 1, 1990, that do not contain their own statute of limitations, are covered by a catch all 4-year statute of limitations for actions arising under federal statutes, 28 U.S.C. § 1658. Section 1983 and 1985 were both enacted prior to 1990. The four year statute of limitations does not apply to claims under § 1983 and § 1985. Instead, claims under these sections are governed by "the most appropriate or analogous state statute of limitations." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)(§ 1981 case). *See also Wilson v. Garcia*, 471 U.S. 261, 268 (1985)(§ 1983 case); *Bell v. Fowler*, 99 F.3d 262, 265-266 (8th Cir. 1996)(§ 1985 case). In Arkansas, this is the three year personal injury statute of limitations, Ark. Code Ann. 16-56-105(3)

(2005). *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001)(Ark. Code Ann. § 16-56-105(3) is the statute of limitations applicable to § 1983 cases); *Kaster v. State of Iowa*, 975 F.2d 1381, 1382 (8th Cir. 1992)(personal injury state statute of limitations applies to § 1985 cases).

Section 1986 has its own statute of limitations. 42 U.S.C. § 1986. It provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." *Id*. *See also Hoagland v. Town of Clear Lake*, 415 F.3d 693, 700 (7th Cir. 2005).

Plaintiffs' civil rights causes of action accrued when they knew or had reason to know of harm constituting the basis of the action. *Nasim v. Warden, Maryland House of Corrections*, 64 F.3d 951, 955 (4th Cir. 1995). Movants maintain the civil rights causes of action against them arose out of events that occurred on May 22nd and May 23rd, 2002. They point out all documents they created were generated within this two day period, the warrants were issued for the Plaintiffs' arrests on May 23, 2002, and Plaintiffs received notice of the potential criminal prosecution from Browning on May 23, 2002. (Doc. #10 at ¶ 208).

In contrast, Plaintiffs point out they were arrested on June 9, 2002, in Kentucky on the Arkansas warrants. After this arrest, Plaintiffs point out the Arkansas arrest warrants remained active until September 19, 2003. They maintain the statute of limitations did not begin to run until the warrants were voided. They also point out that they tendered their complaint to the court for filing, as evidenced by the received stamp, on June 7, 2005, not June 23, 2005, the date the complaint was actually filed.

A cause of action arises under § 1983 when an officer, either knowingly and intentionally, or with reckless disregard for the truth, includes a false statement within a warrant affidavit when with the false material set aside, the affidavit's remaining content is insufficient to establish probable

10

cause. *See e.g., Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991). The same analysis applies to omissions of fact. A cause of action arises when: (1) the facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and (2) the affidavit, supplemented by the omitted information, could not support a finding of probable cause. *United States v. Lueth*, 807 F.2d 719, 726 (8th Cir. 1986).

These causes of action arise out of the constitutional "guarantees of fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause." *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir. 1992). In general it has been said that false arrest and false imprisonment claims accrue when the arrest is made. *See e.g., Montgomery v. DeSimone*, 159 F.3d 120, 126 n. 5 (3d Cir. 1998).

We conclude the Plaintiffs' claims arising out of the alleged false arrest and false imprisonment arose at the earliest on the date of their arrest June 9, 2002.[3] Accordingly, Plaintiffs had three years from then on the § 1983 and § 1985 claims to institute suit and one year from that date to institute suit on the § 1986 claim. This action was filed on June 23, 2005 (Doc. #1). However, as Plaintiffs correctly note, it was submitted to the clerk's office for review on June 7, 2005, as is evidenced by the received stamp contained on the first page of the complaint. Because the complaint was accompanied by an IFP application it was forwarded to the undersigned for review

---

[3] For purposes of this motion, we will assume the Plaintiffs' claims arose on the date of the arrest. We find it unnecessary to decide whether the accrual of the cause of action for false arrest and false imprisonment was delayed because of the rule set forth by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). In *Heck,* the Supreme Court held that any suit for damages premised on a violation of civil rights is barred if the basis for the suit is inconsistent with or would undermine the constitutionality of a conviction or sentence. These claims may not proceed until the conviction or sentence has been invalidated. This rule has been applied to false arrest and false imprisonment claims. *See e.g., Anderson v. Franklin County, Mo.,* 192 F.3d 1125, 1131 (8th Cir. 1999)(district court correctly dismissed without prejudice § 1983 claims of false arrest and false imprisonment under *Heck*). In those circumstances, the cause of action does not accrue until dismissal or the charges or the conviction has been invalidated. *See e.g., Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997)(If success on the claims would have necessarily implied the invalidity of a potential conviction, then the claims did not accrue until the day on which the charge was dismissed). *But see, Gibson v. Superintendent of New Jersey Dept. of Law & Public Safety*, 411 F.3d 427, 449 (3d Cir. 2005)(Fact specific inquiry needed to determine if the Fourth Amendment claims can be brought under § 1983 even without a favorable termination of the criminal charges).

prior to filing, it was this review process that resulted in the complaint not being filed until June 23, 2005. The complaint should be deemed to have been filed on the date tendered to the clerk. The complaint was therefore filed within three years of the date of the arrest. Therefor, Plaintiffs civil rights claims under §§ 1983 and 1985 are not barred. Plaintiffs claims under § 1986 are however barred by the applicable one year statute of limitations.

In counts six through eleven and count thirteen Plaintiffs assert state law claims of: malicious prosecution, defamation, intentional infliction of emotional distress, false arrest and imprisonment, assault, battery and abuse of process. (pp. 82-91, 92-95; ¶¶ 417-66; 471-87). In Arkansas a three year statute of limitations, Ark. Code Ann. § 16-56-105, applies to all tort actions not otherwise limited by law. *O'Mara v. Dykema*, 328 Ark. 310, 317, 942 S.W.2d 854 (1997). The three year statute applies to the malicious prosecution, intentional infliction of emotional distress, *McQuay v. Guntharp*, 336 Ark. 534, 542, 986 S.W.2d 850 (1999), and abuse of process claims. The causes of action accrue when the wrong occurs and the right to commence the action comes into existence. *Courtney v. First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989); *Gibson v. Herring*, 63 Ark. App. 155, 975 S.W.2d 860 (1998). The earliest date these causes of action could accrue on would be the date of the arrest, June 9, 2002. As the action was filed within three years of that date, these claims are not barred.

With respect to defamation, a one year statute of limitation applies to slander claims, Ark. Code Ann. § 16-56-104(3), while a three year statute of limitation applies to libel claims, Ark. Code Ann. § 16-56-105(5). The alleged false statements were made in connection with the obtaining of the warrants for the Plaintiffs arrest. These statements were made on May 23, 2002. Even if the cause of action for slander could be said not to have arisen until the arrests were made or the warrants voided, any slander claims would be barred by the statute of limitations. Assuming the

arrest on June 9, 2002, is the date of accrual for the libel cause of action, the libel cause of action would not be barred.

A one year statute of limitation applies to the false arrest or imprisonment claim, Ark. Code Ann. § 16-56-104(2)(B), and the assault and battery claims, Ark. Code Ann. § 16-56-104(2)(A). Plaintiffs contend that as a result of Movants' actions the arrest warrants remained active until September 19, 2003. However, even if the Plaintiffs are given the benefit of September 2003 date this case was not filed within one year of that date. These claims are barred by the applicable state statutes of limitation. Plaintiffs have alleged no facts which would toll the running of the statutes.

## CONCLUSION

Accordingly, we recommend that the motion for judgment on the pleadings of the separate Defendants the City of Hot Springs, Gary Ashcraft, and Paul Norris (Doc. #178) be granted in part and denied in part. Specifically, we recommend that the complaint be treated as having been filed *nunc pro tunc* to the date it was received at the United States District Court Clerk's Office, June 7, 2005. Further, we recommend that the motion for judgment on the pleadings be **granted** with respect to the following claims:

(1). The claims brought under 42 U.S.C. §1981 for failure to state a claim;

(2). The claims brought under 42 U.S.C. § 1986 as barred by the applicable one year statute of limitations; and

(3). The supplemental state law claims of slander, false arrest and/or false imprisonment, and assault and battery as barred by the applicable one year statutes of limitation.

Finally, we recommend that the motion for judgment on the pleadings be **denied** with respect to the following claims:

(1) The claims brought under 42 U.S.C. § 1983;

(2) The claims brought under 42 U.S.C. § 1985; and

(3) The supplemental state law claims of malicious prosecution, intentional infliction of emotional distress, and abuse of process.

**The parties have ten days from receipt of this report and recommendations to file objections to the same pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of May 2006.

                                          /s/ Bobby E. Shepherd
                                          UNITED STATES MAGISTRATE JUDGE